**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manuel Gonzalez, Jr., ) | CIV 13-122-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Manuel Gonzalez, Jr.'s appeal from the Social Security Administration's final decision to deny his claim for supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff received supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c, as a child. Redetermination of these benefits is required when a child reaches age 18 and, in this case, it was determined in September 2009, that Plaintiff was not disabled under adult disability standards. (Tr. at 17, 73-78.) Plaintiff requested reconsideration of that determination (Tr. at 17, 79), and, after a hearing in July 2011 (Tr. at 17, 30-71), an administrative law judge issued a decision finding that Plaintiff was not disabled (Tr. at 17-24). The Appeals Council denied Plaintiff's request for review (Tr. at 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff brought the current action pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

   (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

   (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

   The ALJ first found that Plaintiff attained age 18 on January 2, 2007, and was eligible for supplemental security benefits as a child for the month preceding the month in which he attained age 18. (Tr. at 19.) Plaintiff was notified that he was found no longer disabled as of September 1, 2009, based on a redetermination of disability under the rules for adults who file new applications. (Tr. at 19.) At step two, the ALJ found that since September 1, 2009, Plaintiff had the following severe impairments: Treacher-Collins syndrome and bilateral hearing impairment. (Tr. at 19.) At step three, the ALJ stated that since September 1, 2009, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 19-20.) After consideration of the entire record, the ALJ found that since September 1, 2009, Plaintiff retained "the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following limitations: the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; he can stand and walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. He is limited in hearing and speaking and should avoid all exposure to excessive noise. He should avoid even moderate exposure to hazards."[1] (Tr. at 20-23.) The ALJ determined that Plaintiff has no past relevant work, but considering his age, education, work experience, and residual

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. at 23-24.) Therefore, the ALJ concluded that Plaintiff's disability ended on September 1, 2009, and he has not become disabled again since that date. (Tr. at 24.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to include the limitations caused by Treacher-Collins Syndrome in the residual functional capacity assessment; (2) failing to properly consider his subjective complaints; (3) failing to properly consider lay witness testimony; and (4) failing to make a proper finding at step five of the sequential evaluation process. Plaintiff requests that the Court vacate the decision of the ALJ and remand for a determination of benefits.

### A.     Residual Functional Capacity Assessment

Plaintiff argues that the ALJ's residual functional capacity assessment is flawed because it did not accommodate all of his alleged limitations. Specifically, Plaintiff alleges that the ALJ "did not consider any of the limitations caused by the syndrome, (other than hearing loss and his limitation in speaking, although the limitations are not specifically identified)" in assessing his residual functional capacity. Plaintiff states that he has problems breathing, jaw pain, and headaches, as well as his history of multiple surgeries in arguing that the ALJ should have included additional limitations to accommodate those complaints.

The Court finds that the ALJ engaged in a legally sufficient analysis of Plaintiff's residual functional capacity in compliance with SSR 96-8p. See SSR 96-8p, 1996 WL 374184. In support of the residual functional capacity assessment, the ALJ discussed a wide range of medical evidence and witness testimony. The ALJ appropriately addressed Plaintiff's credibility by discussing the objective evidence and Plaintiff's daily activities. Further, as to the objective medical evidence, the ALJ identified which medical evidence was compelling and accorded it appropriate weight, and also identified the medical evidence that was less compelling, explained why it was less compelling, and accorded it little weight. The ALJ provided ample explanations as to how the medical evidence supported his residual

1  functional capacity assessment and how he resolved inconsistencies in the evidence. (Tr. at
2  20, 21-23.) The ALJ then concluded that the record as a whole – including the medical
3  expert's testimony – showed that Plaintiff "certainly appears to be more active and functional
4  than an individual who is precluded from all work" and thus limited Plaintiff to medium
5  work with additional limitations to accommodate his credible hearing impairments. (Tr. at
6  22-23.) Specifically, the ALJ noted that the medical evidence and physical examinations
7  showed deformities in Plaintiff's face and left ear as well as mucoid secretions from the eyes,
8  but that the remainder of the examination and medical evidence was largely normal except
9  for some hearing loss. (Tr. at 22.)

10  Plaintiff criticizes the ALJ's assessment arguing that the ALJ's statement that Plaintiff
11  had a "limited" ability to hear and speak was not sufficiently specific. However, in his
12  decision, the ALJ explained "[w]hile I agree that the claimant does have some limitations on
13  hearing and speaking, ... ultimately, I concur with the State agency medical consultants who
14  deemed the claimant capable of performing medium work ... ." (Tr. at 22.) The ALJ went on
15  to accommodate Plaintiff's "limited" abilities stating that he should avoid excessive noise
16  and even moderate exposure to hazards. (Tr. at 20-23.)

17  Plaintiff also argues that the ALJ's finding was "inconsistent with the medical opinion
18  he allegedly adopted." The ALJ gave "great weight" to the opinions of Pamela Tom, M.D.
19  and James Hopkins, M.D., stating that he could perform work that did not involve exposure
20  to excessive noise. (Tr. at 22, 295-302, 332.) Dr. Tom opined exactly what the ALJ found
21  when she further explained her opinion that Plaintiff should "avoid all exposure" to noise by
22  stating that "[e]xcessive noise may exacerbate hearing impairment." (Tr. at 299.) Thus, the
23  ALJ actually adopted Dr. Tom's opinion that Plaintiff should avoid all exposure to
24  "excessive" noise, rather than avoid all exposure to "all" noise.

25  While Plaintiff undoubtedly would have preferred that the ALJ had further limited
26  him and found that he was incapable of any work, the ALJ's finding that Plaintiff could
27  perform a range of work with limitations to accommodate his "limited" abilities is supported
28  by the record as a whole. None of Plaintiff's treating physicians offered an opinion that he

1  had any work-related limitations. And, the ALJ adopted both Melanie Alarcio, M.D.'s and
2  medical expert Sabina Scott, M.D.'s opinions that Plaintiff should avoid working around
3  hazards such as moving machinery and excessive noise. (Tr. at 22, 36, 293.)

4      In sum, the ALJ weighed all of the medical and other evidence and adopted a residual
5  functional capacity assessment that was in line with the record as a whole. The ALJ's
6  assessment is supported by substantial evidence and, as such, the Court finds no error.

## B.    Plaintiff's Subjective Complaints

    Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

    To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

    In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

1 activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d
2 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and
3 observations of treating and examining physicians and other third parties regarding, among
4 other matters, the nature, onset, duration, and frequency of the claimant's symptom;
5 precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
6 ... ." Smolen, 80 F.3d at 1284 (citation omitted).

7 Plaintiff was represented by an attorney at the July 2011 administrative hearing. (Tr.
8 at 42.) He testified that he had worked a few months prior at a warehouse, but was fired after
9 only a few weeks because he had a hard time breathing and had to take a lot of breaks. (Tr.
10 at 46-47.) He said he had also worked for a children's charity, and landscaping business, and
11 a car auction in the past. (Tr. at 47-48, 52.) Plaintiff testified that he had problems at his last
12 jobs due to his difficulty hearing the machinery that operated around him. (Tr. at 51.) He
13 claimed to have left the landscaping job because he needed "[s]urgeries." (Tr. at 52.)

14 Plaintiff claimed that he was not able to drive and that he did not have a "secure
15 home" but rather moved between friends' and family members' houses. (Tr. at 50.) He said
16 that, during a typical day, he helped out around the house (such as taking out the trash or
17 doing the dishes) and watched television. (Tr. at 50-51, 56.)

18 Plaintiff testified that he was unable to work because he had "continuous mucous" in
19 his eyes every day, and that he also had problems breathing, had a hart time talking loudly,
20 and had a hard time hearing. (Tr. at 48, 55-56.) He said he also had jaw pain and associated
21 headaches. (Tr. at 53.) Plaintiff testified that doctors had performed numerous surgeries on
22 him (he estimated that it was "30, upwards") (Tr. at 58), and that doctors told him he needed

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 7 -

1 more surgeries but that his insurance would not cover them (Tr. at 49). The ALJ clarified, however, that Plaintiff was covered under the state insurance system, Access. (Tr. at 52.) He said he did not take any medication (Tr. at 49), but later said he was waiting for insurance approval for medications for his pain (Tr. at 53). He testified that he had been given hearing aids that amplified his hearing but did not make it any clearer; he said he lost the hearing aids "like a couple months ago" and had not replaced them. (Tr. at 59.) Plaintiff stated that he believed his condition was worse than when he was a child because of the cumulative effect of the "[s]urgeries and things" and that he would need additional surgeries in the future. (Tr. at 56, 62.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made extensive credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding his pain and limitations. Although the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. (Tr. at 20-22.)

In his evaluation of Plaintiff's testimony, the ALJ first referenced the objective medical evidence noting inconsistencies between Plaintiff's medical records and his reported symptoms and testimony. (Tr. at 21-22); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible). Specifically, the ALJ stated, in pertinent part:

> First, the objective evidence of record, including the claimant's treatment notes and records, do not corroborate his allegations of disability. While I agree that the claimant does have some limitations on hearing and speaking, as indicated by the medical expert at hearing, ultimately, I concur with the State agency medical consultants who deemed the claimant capable of performing medium work (Exhibits 6F and 11F). A physical examination showed deformity of the face and left ear, as well as mucuoid secretions from the eyes; however, the

- 8 -

> remainder of the exam was essentially normal. An audiological consultative exam, including testing, on in February of 2010, indicated mild to moderate hearing loss in the right ear and moderate to severe hearing loss in the left ear (Exhibit 9F). However, as discussed above, the medical expert who testified at the hearing in this matter opined that the claimant's hearing loss did not meet or equal Listing level severity and would be improved by the use of hearing aids, a recommendation also echoed by the consultative examiner (Exhibit 9F). Moreover, the medical expert characterized the claimant's hearing loss as moderate in the left ear and only mild in the right ear.

(Tr. at 21-22.)

The ALJ continued his discussion of the objective evidence noting that although Plaintiff's history of surgical correction is significant, his post-operative treatment notes consistently demonstrate that Plaintiff is "doing well" with little or no complications. (Tr. at 22, 315-27, 362-541.) Moreover, the ALJ found that Plaintiff himself admitted that his last surgery was over two years ago; he testified that he is not using any medication at this time; and stated that his headaches are relieved simply by lying down with a cold towel on his head. (Tr. at 22.)

Lastly with respect to the objective medical evidence, the ALJ found that contrary to Plaintiff's hearing testimony, Plaintiff had no history of psychiatric or psychological treatment and Plaintiff's own mother even stated during a psychological consultative examination that she did not believe that Plaintiff was depressed. (Tr. at 22.) The ALJ additionally found that Plaintiff himself indicated that he has no problem getting along with others and a State agency medical consultant even opined that Plaintiff has no medically determinable mental impairment. (Tr. at 22, 163-71, 269-82.)

Next, the ALJ discussed Plaintiff's daily activities and level of functioning. (Tr. at 22.) "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged). Specifically, referencing Plaintiff's testimony, the ALJ noted that Plaintiff himself testified that he could lift up to 50 pounds and that he does chores and tasks around

1  the house such as taking out the trash, dishes, and picking up after himself. (Tr. at 22.) The
2  ALJ additionally found functional reports completed by Plaintiff which indicated that
3  Plaintiff cares for his younger cousins and prepares food, including, sandwiches, cereal,
4  frozen foods, and hot dogs. (Tr. at 22, 163-71, 183-90.) Plaintiff also stated that he has no
5  difficulty completing yard work, including, raking the yard. (Tr. at 22, 163-71, 183-90.)
6  While not alone conclusive on the issue of disability, an ALJ can reasonably consider a
7  claimant's daily activities in evaluating the credibility of his subjective complaints. See, e.g.,
8  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility
9  determination based in part of the claimant's abilities to cook, clean, do laundry, and help her
10 husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)
11 (upholding ALJ's credibility determination based in part on the claimant's abilities to cook,
12 clean, shop, and handle finances).

13       In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
14 allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
15 are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor
16 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
17 that led to the ALJ's decision. The Court concludes that the ALJ has supported his decision
18 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
19 the Court finds no error.

20 **C.  Lay Witness/Third-Party Statements**

21       Plaintiff contends that the ALJ erred in failing to properly consider the statements of
22 his mother. Plaintiff states that the ALJ gave a generic reason for discounting his mother's
23 statements which fails to "satisfy the Ninth Circuit's directives."

24       In determining whether a claimant is disabled, an ALJ must consider lay witness
25 testimony regarding the claimant's inability to work. See Bruce v. Astrue, 557 F.3d 1113,
26 1115 (9th Cir. 2009) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir.
27 2006)). An ALJ cannot disregard lay witness testimony without comment, see Bruce, 557
28 F.3d at 1115 (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), but may do so

1   only upon providing specific reasons that are "germane to each witness." Id. (quoting
2   Nyugen, 100 F.3d at 1467); Stout, 454 F.3d at 1054. When an ALJ errs in failing "to properly
3   discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider
4   the error harmless unless it can confidently conclude that no reasonable ALJ, when fully
5   crediting the testimony, could have reached a different disability determination." Stout, 454
6   F.3d at 1056.

7   Here, the ALJ specifically considered the opinion of Plaintiff's mother and found that,
8   like Plaintiff's statements, it was inconsistent with the medical evidence; it was not a
9   statement from a disinterested party; and, even if it was afforded full credibility, it was not
10  persuasive evidence that Plaintiff was unable to sustain all work. (Tr. at 23 (citing SSR 06-
11  03p, 2006 WL 2329939).) Accordingly, the Court finds that the ALJ properly considered the
12  third-party statement set forth in the record and appropriately disregarded the statement and
13  testimony by providing specific reasons "germane to each witness."

14  Even if there was a failure to properly discuss Plaintiff's mother's opinion, the Court
15  concludes that no reasonable ALJ, even if fully crediting the statements, could have reached
16  a different disability determination. The limitations and symptoms contained in the opinion
17  are entirely similar to and consistent with, those which Plaintiff described in his own
18  testimony. As a result, because the Court concludes that the ALJ's decision to discredit
19  Plaintiff's testimony was supported by substantial evidence, and because Plaintiff's mother's
20  opinion was consistent with Plaintiff's testimony, it was reasonable for an ALJ to disregard
21  her statements as well.

22  **D.    Step Five of the Sequential Evaluation Process**

23  Plaintiff contends that the ALJ erred by failing to make a proper finding at step five
24  of the sequential evaluation process. Plaintiff argues: (1) that the ALJ's hypothetical to the
25  vocational expert did not include all of his limitations and did not accommodate his jaw pain,
26  vision problems, breathing problems, or headaches; (2) that, under SSR 00-4p, 2000 WL
27  1898704, the ALJ has an affirmative duty to ask the vocational expert whether there are any
28  conflicts between the expert's testimony and the Dictionary of Occupational Titles (DOT)

1 2 3 4 and that the ALJ failed to satisfy this duty when he (a) "transferred the onus to the [vocational expert] to notify him of any conflicts" and (b) failed to inquire about the possible conflicts after the jobs were given; and (3) that there were conflicts between the vocational expert's testimony and the DOT, which he claims the vocational expert failed to identify.

At step five, the Commissioner has the burden of demonstrating that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's residual functional capacity, age, education, and work experience. See Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). The Commissioner may satisfy that burden either through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2. See Tackett, 180 F.3d at 1100-01; see also Hill v. Astrue, 638 F.3d 1144, 1152 (9th Cir. 2012) ("The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

In the instant matter, the ALJ found that Plaintiff does not have past relevant work that he can do. (Tr. at 23-24.) Thus, having considered the medical evidence and testimony, the ALJ questioned the vocational expert to determine whether a person of Plaintiff's vocational profile who had Plaintiff's credible limitations could perform any substantial gainful activity. (Tr. at 23-24.) The vocational expert testified that a hypothetical individual with Plaintiff's physical limitations could perform the jobs of packager (DOT 920.587-018) and assembler (DOT 726.687-022). (Tr. at 22-23, 65.) The ALJ relied on the vocational expert's testimony in finding that Plaintiff could perform work in the national economy and was not disabled within the meaning of the Act after September 1, 2009. (Tr. at 24.)

Plaintiff first argues that the ALJ's hypothetical to the vocational expert did not include or accommodate his jaw pain, vision problems, breathing problems, or headaches. As previously discussed, however, the ALJ's residual functional capacity assessment accommodated all of Plaintiff's credible limitations that were supported by the medical record. The ALJ was not required to include those limitations that were not supported by the medical record in the residual functional capacity assessment or in his hypothetical question to the vocational expert. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that, because the hypothetical "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the ALJ properly relied on the vocational expert's testimony in response); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("The omitted limitations, however, were only those that the ALJ found did not exist. Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that [claimant] had claimed, but failed to prove.").

Second, Plaintiff alleges that the ALJ failed to ask the vocational expert whether there are any conflicts between the expert's testimony and the DOT. However, the record indicates that the ALJ asked the vocational expert the following questions:

> Q   Are you familiar with Social Security's definitions of the skill levels and exertional levels of work?
>
> A   Yes.
>
> Q   And do you understand that [] if you [] give an opinion which conflicts with the information in the [DOT], then you need to advise us of the conflict and the basis of your opinion?
>
> A   Yes.

(Tr. at 63.) Accordingly, the Court finds that the ALJ satisfied his duty of inquiring whether there were conflicts between the vocational expert's testimony and the DOT. See Massachi v. Astrue, 486 F.3d 1149, 1150 (9th Cir. 2007) (discussing SSR 00-4p and holding that an ALJ may not rely on the testimony of a vocational expert regarding the requirements of a

1 particular job without first inquiring about conflicts between the expert's testimony and the
2 DOT).

3   Third, Plaintiff contends that there were conflicts between the vocational expert's
4 testimony and the DOT, which the vocational expert failed to identify. The record
5 demonstrates that the vocational expert identified two jobs that Plaintiff could perform:
6 packager (DOT 920.587-018) and assembler (DOT 726.687-022). (Tr. at 24, 65.) The job of
7 packager requires the ability to speak in simple sentences, has a noise level of four (loud),
8 and involves no exposure to moving mechanical parts or other hazards. See DOT 920.587-
9 018, 1991 WL 687916. The job of assembler (encapsulator) requires the ability to speak
10 clearly with appropriate pauses and emphasis, has a noise level of three (moderate), and
11 involves no exposure to moving mechanical parts or other hazards. See DOT 726.687-022,
12 1991 WL 679635. Plaintiff also cites to the Selected Characteristics of Occupations Defined
13 in the DOT (SCO), which supplements the DOT and, among other things, codes the noise
14 intensity level to which a worker is exposed in the job environment from 1 to 5. "Moderate"
15 noise is coded as a "3" (such as the assembler job) and is illustrated by the jobs of "business
16 office where type-writers are used; department store; grocery store; light traffic; fast food
17 restaurant at off hours." "Loud" noise coded as "4" (such as the packager job) and is
18 illustrated by the jobs of "can manufacturing department; large earth-moving equipment;
19 heavy traffic."

20   Relying on the DOT and the SCO, Plaintiff argues that the jobs of packager and
21 assembler are both precluded by the ALJ's finding that Plaintiff avoid all exposure to
22 excessive noise and the ALJ's finding that he was "limited" in his ability to speak. (Tr. at
23 20.) In support of his argument, however, Plaintiff relies on his own statements regarding his
24 limitations, which the ALJ reasonably found to be incredible. Further, in his opinion, the ALJ
25 discussed Plaintiff's "limited" abilities stating, "[w]hile I agree that the claimant does have
26 some limitations on hearing and speaking, ... ultimately, I concur with the State agency
27 medical consultants who deemed the claimant capable of performing medium work ... ." (Tr.
28 at 21-22.) The ALJ found that Plaintiff could perform work that did not involve exposure to

- 14 -

1 excessive noise, and the vocational expert testified that a hypothetical individual with
2 Plaintiff's "limited" abilities could perform the jobs of packager and assembler. (Tr. at 24,
3 65.) The ALJ was entitled to rely on this testimony. See Lockwood v. Comm'r Soc. Sec.
4 Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (ALJ can meet agency's burden of showing that
5 claimant can perform work existing in significant numbers by taking the testimony of a
6 vocational expert or referencing the Medical-Vocational Guidelines).

7        To the extent that the job of packager with a noise level of 4 (loud) exceeds the ALJ's
8 limitation to avoid excessive noise, the vocational expert also identified the job of assembler,
9 which only involves moderate noise. The vocational expert testified that there were six
10 million such jobs in the national economy and 16,000 in the local economy. Thus, any error
11 on the part of the ALJ in relying on the vocational expert's testimony regarding the packager
12 position is harmless because the assembler position identified a sufficient number of jobs and
13 fit within the ALJ's residual functional capacity assessment. See Gray v. Comm'r of Soc.
14 Sec. Admin., 365 F. App'x 60, 63 (9th Cir. 2010) (unpublished) (980 jobs in the state and
15 59,000 jobs nationwide significant); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995)
16 (2,300 jobs in the county and 64,000 jobs nationwide significant).

17        The ALJ reasonably found based on vocational expert testimony that Plaintiff could
18 perform jobs that existed in significant numbers in the national economy. Thus, the Court
19 finds that the ALJ's decision at step five is supported by substantial evidence and his reliance
20 on the vocational expert's testimony does not constitute legal error.

## V. CONCLUSION

22        Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
23 supplemental security income in this case. Consequently, the ALJ's decision is affirmed.
24        Based upon the foregoing discussion,
25 \\\
26 \\\
27 \\\
28

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 26th day of March, 2014.

*/s/ Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge